We'll take one more case before we take a 10-minute break. And that next case is Yarbrough v. Tatom, Clouser & Craft. Mr. Jolly is here for the appellants and Mr. McKenzie for the appellee. Mr. Jolly, we will begin when you're ready. May it please the Court, good morning. My name is John Jolly. I represent Nurses Craft, Tatom, and Clouser Bray, as well as Sheriff Morgan. And Sheriff Morgan's issues have pretty well been resolved, so it's basically the nurses on whose behalf I argue today. The Court, I see essentially, this is an appeal of the denial of qualified immunity to the nurses whose treatment efforts ultimately proved to fail. Can I ask you, ordinarily, I'm sorry, not my style, or I don't intend it to be my style to hijack your argument at the very beginning, but would you go ahead and address the jurisdictional, the appellate jurisdictional issue? That was my next issue. Perfect. Great. Thank you. Because the Court has clearly expressed its interest and concern about that issue. Starting with Johnson v. Jones, Johnson v. Jones teaches us that there's no appeal of summary judgment orders which determine whether the pretrial record sets forth a genuine issue for trial. Judge Roger's order, though not exactly that language, uses very close to that language. We've learned since then that the 11th Circuit has since then decided to control the Caldwell. Caldwell decided that interlocutory review remains available where the denial of summary judgment is based, quote, even in part on a disputed issue of law. This Court has struggled some with that issue and how to apply it to. On one of the cases that's relevant for us, Burnett v. Taylor, Judge Wilson wrote the dissenting opinion where he thought this is a disputed issue of fact case, or it's fact issues that we're dealing with, and would have voted not to decide the case at all. Here's what I think is why, and I'm arguing that this case fits within the Cottrell v. Kubrick in that it decides at least in part a disputed issue of law. The facts are, the real facts about what happened in the treatment of Mr. Stevenson, those facts are basically, for lack of a better term, controlled by the testimony of the defendants, its nurse, its Tatum, Klauser Bray, Kraft, and the medical records themselves. In the end, who got glucagon, who got his blood sugar tested when, is not a disputable issue of fact. I see what you're saying in general about that, but there are some parts of the medical record that appear to be in factual dispute, and I direct you to the tail end of the treatment when they get out the AED device, and it looks like from the record that the EMS crew says that that device wasn't even working, while the nurse's notes indicate that they, in fact, used that device, and I think your colleague on the other side of the aisle has flagged that as a factual dispute. I agree. I think we have a, I'm going to come back to that, but I think what happens here is, first of all, that fact, things have long gone south by the time the discovery of the need for the application of the AED device comes into play. This man is already in cardiac arrest, and so even if there's a disputed fact about it, it does not affect whether or not somebody had subjective intent concerning it. If we pretend that that's the only use that your opponent is going to make of that dispute, which I would imagine it is not. Yes, but for, now to come back to the original question, in my view, when you get to the and Dr. Stern, when they start taking undisputed facts and applying them to the principle of deliberate indifference, I would respectfully suggest that they've moved from fact issues to consideration of, at a minimum, mixed questions of fact and law, but I would argue that whether or not those facts could yield deliberate indifference is a conclusion of law, which by the rather large escape clause created by Cottrell versus Caldwell. So I guess my concern when I originally attacked these briefs was first with what Judge Rogers wrote in her concluding paragraph, which you have accurately paraphrased, as saying that she's denying summary judgment because there is a genuine issue of material fact. And then in your brief, the way that you present the issue to us, whether there was sufficient evidence to support a permissible inference, and then again in the statement regarding oral argument, the issue which arises is whether there was sufficient evidence of the subjective intent of the nurses to support an inference that any of them was deliberately indifferent. That just sounds to me like fact dispute, fact dispute, fact dispute, fact dispute. I hope the court will appreciate candor out of a lawyer who says, I sure would have drafted that first brief a little bit differently than I did once I started looking carefully at the cases involved in the court's conclusion. I would also respectfully suggest that I got that issue a whole lot better in the reply brief than I did in the initial brief. I walked myself down a path that I think can correctly be argued better as argued in the disputed issue of fact. There's no question about it. If we assume for a moment that there is jurisdiction to consider this appellate issue at this stage and under the collateral order doctrine, I would argue that the court made four fundamental errors that yield an entitlement to reversal in the entry of summary judgment for the nurses. The first one is at page 19 of the court's summary judgment order, wherein first of all, curiously, she left to the defendants the duty to establish their entitlement to qualified immunity from suit. My understanding of the law is once it is established by individual persons that they are acting within the scope of their discretionary authority, basically on the job, doing what their job pays them to do. And they're acting under color of state law. The burden of proof shifts from the defendants to establish the entitlement, to the plaintiff to establish that they're not entitled to qualified immunity. And it is just wrong to say the burden is still theirs. Secondly, at page 10, the court relies on Adams v. Pogue, page 10 of the court's order. The court relies on Adams v. Pogue for the proposition that medical experts can and are regularly used for how the plaintiff will frequently show deliberate indifference has been established. Significantly, the court did not go into a discussion of the psychs also was cited by the 11th Circuit, but three and a half years later, which prohibits experts from testifying about subjective intent requirements. No magic phrase is saying I find subjective intent is found, whereas though Dr. Stern is carnectum or does. He literally says the neon light phrase is the one that got made the neon light phrase. It stood there like a neon light. What he's actually inevitably inferentially saying is anybody would have known they should have known. Therefore, they subjectively did know. And that classically is a bridge too far and is unsupportable in the record. Not only does it not establish a sufficient disputed issue of fact, there's no fact of any type that gets raised there. Dr. Stern's opinion is pretty strong now. He says that these nurses, that the treatment that they gave was grossly incompetent. It was grossly inadequate medical care. That this care resulted in his death from pneumonia and uncontrolled diabetes. He says they were aware, subjectively aware of facts signaling a serious risk of harm. The vomiting, the low blood sugar, the diarrhea, the mottled skin. And so when we look at the components of deliberate indifference, the first component, is there a subjective knowledge of a risk of serious harm? That's what we said in our opinion in Farrell versus West. They disregard that risk by conduct that is more than mere negligence. It seems as if Dr. Stern's opinion fits clearly within that deliberate indifference standard. I agree. What it doesn't allow him to do, however, is make the third step. The one that says, these people are the worst nurses in the history of the world. They had no idea what their obligations were under the circumstances. And he can go there. He can even describe it as being deliberately indifferent. What he can't go to, but did go to, and with that which is a sine qua non of proceeding further, is that they made the subjective inference themselves to basically say the non-lawyer's interpretation of what deliberate indifference is. If I was a non-lawyer, I would describe deliberate indifference as being accidentally on purpose. He has gone to the they subjectively concluded and made a conscious choice not to do that. And that expert cannot do that without some way of going there. And it can be done. I can think of three ways that it can be done. So if this case goes to the jury, the court would revisit qualified immunity after the jury's verdict, right? If the jury- I will raise qualified immunity. Bound for Yarborough, right? The court would- This case has not been tried. I understand that. If it goes to the jury, qualified immunity is still an issue for the court and not the jury, right? Yes, sir. I will raise it at rule 50 motion. I will raise it after trial. Yes, sir. The court would revisit after the evidence, right? That is indisputably true. Tell me, how does that work? Does the court give the jury special interrogatories that will help the court decide whether or not these nurses get qualified immunity? I would actively seek special interrogatories to the jury if it gets that far. But I will actively seek an interrogatory that says, jurors tell us, did they have the intent, whatever the language will be, did they have the subjective intent to cause this man pain or discomfort? And that answer will be relevant in post-trial motions should the defendant lose on a federal law claim. However, the whole purpose of qualified immunity is to protect individuals from even having to go to trial. And I consider it my obligation to proceed there. All right. You've reserved some time, Mr. Jolly, and we'll hear from Mr. McKenzie. May it please the court. The last argument is any indication, your honors. I'll address the jurisdictional question first, if that's what you wish. The Johnson v. Jones case is abundantly clear that when the qualified immunity appeal focuses solely on whether they're disputed issues and material fact instead of whether the law was clearly established, that the court does not have jurisdiction. Even Cattrall v. Caldwell, which creates an enormous exception, still doesn't swallow that up. It still ends in the Cattrall v. Caldwell opinion saying, but if this is one of those cases where there's solely a factual dispute and that's what allows it to continue down the road, that the court has no jurisdiction. As the court correctly noted, the judge's order points out many different material factual conflicts, which go to the very heart of the issues and which can't be separated from any qualified immunity analysis that the court undertakes. Second, the framework and the entire argument put forth by the defendant and both its initial, the appellant, and both its initial brief and its reply brief focus solely on three issues. Those three issues, which the court can't consider anything outside of, is that first, there was no sufficient evidence to prove in deliberate indifference. Second, that it can't impart medical records collective knowledge on individual defendants. And third, that it can't consider the expert testimony. All those go down to sufficiency of evidence questions and none of them turn on an analysis of whether the law was clearly established. I don't actually recall any analysis in either of the briefs talking about whether the law was clearly established or not. So when it comes down to the issue of the jurisdictional question, do I believe that the court, based on Cattralvi Caldwell's giant exception, allows for this court to have jurisdiction over this appeal? No, I do not believe it does. But at the same time, I don't believe it matters either way. Even if this court does have jurisdiction, it must affirm the lower court. There are several reasons for this. First and foremost, you have to affirm the district court because the defendants in this matter clearly violated the Constitution, the 8th and 14th Amendment rights of Mr. Stevenson that were clearly established at the time. There are three cases that, while not dealing with the exact same medical condition, talk about the exact same kinds of delays in treatment, of providing some care, but completely ineffective care. That's the McGilligott case, that's the Carswell case, and that's the Brown v. Johnson case. In this case, a 33-year-old father of two young boys died during a 30-day sentence at jail. What is the evidence of subjective intent? Where's the evidence of subjective intent? Well, Your Honor, the evidence of subjective intent is that all of the defendants admitted that they knew the following. Okay, I'm going to go through a list of symptoms here. It is quite exhaustive. They all admitted during the course of the depositions in this matter that they knew these were going on, and they admitted each and every single one of them discreetly makes them know that there is a serious medical need, okay? First is he had died to you by diabetes with uncontrolled blood sugar ranging from 4-11 all the way down to 38. We are talking high... And rather than eat your time up that way, I understand there's a whole list of symptoms that you can amass. Let's assume you've listed those. Continue. Okay, so they have all of these. They know that that is signaling to them a medical emergency. A layperson, as the clearly established law says, that even if a layperson can understand that a person going through this litany of symptoms that this man was going through required medical attention, that they darn well knew that medical attention was needed. And I can assure you a man that has got nausea, vomiting, diarrhea, has hives all over his body, says he can't eat, can't walk, has pain all over his body, has incredibly low blood sugars, his blood pressure is abnormal and worsening. I mean, I can continue to go on. If you took a look at that person, you would say there is no way that man is okay, and there is no way that he doesn't need attention by a doctor. And it's your argument that the nurses themselves have testified that they realized this meant that he was in an emergency situation. When questioned about whether hypoglycemia was a serious medical emergency, does it require immediate medical attention? They all answered yes. When questioned about the blood pressure, tachycardia, and all these things, they said, yes, these are serious medical needs. Now, when you go to the situation later on in the deposition of asking them, well, in the situation of Mr. Stevenson, does this signal to you? Well, no, clearly it doesn't. But I mean, what defendant that's being sued for killing someone for lack of medical care is going to admit that subjectively, I made a decision not to give this man medical care. The point A in the deposition where they're admitting, you know, this is our duty, we've got to know the medical records, we've got to know these conditions. Yes, all these conditions are serious medical, you know, conditions, and they require immediate medical attention. And then later down the road saying that, well, we don't have to apply it in this situation. Clearly, you can tell that these people knew what they were supposed to be doing, and they did not do it. So I'm guessing, though, that your opponent will take some issue during that argument. You said they, lots, and these people, lots. And he says part of the error is that the district court sort of lumped these people together into a borg, essentially. And don't we need to kind of parse them out one by one? Well, the district court actually did parse them out one by one, but then lumped them back in together. And there's all the reason in the world to lump them back together, because they were asked in their depositions, each of them discreetly, as you can note in the record, number one, do you have a duty to know the medical records of the person? Yes, we sure do. Each and every one of them said that. They also offered up in their deposition testimony that during their shift changes, they share all of the care information from phase one to phase, shift one to shift two, saying that in this shift, this is how we do it. We tell the information from the person from that shift to the next shift. And then Tatum, the one that was on the phone whole time, is being updated all along the way. She knows exactly what's going on. They know what's exactly going on. They said that they have a duty to understand what continuity of care is from one shift to another. So it is completely and obviously within the purview of the district court to lump them together in this situation, because they knew, they knew, and they admitted that they knew. Except for when you get to the direct questioning in the depositions, well, didn't you know this? Well, no, we didn't. But they've told you earlier in the deposition that they know these things. They're just playing a game for the purpose of avoiding liability. And what about your opponent's contention that the expert's testimony might have been fine so far as it went in steps one and steps two, but that in stepping in to say these individuals in fact believed, in fact knew, in fact intended thus and such, that he's just really in no position to testify to that? With respect to my opponent, my opponent has waived any argument he has about the expert at this stage, Your Honor. According with the submitted in support of a motion for summary judgment. And then in 2010, the federal rules of civil procedure were changed, creating 56C2, which required that if you were going to object to something in support of a motion for summary judgment, that you were to file a motion with the court notifying them of the objection as opposed to the old motion to strike. The defendant in this case, Mr. Jolly, number one, did not take the expert's deposition, had every opportunity to do so. Number two, he did not file any kind of motion to strike in the pre-2010 way. And number three, he didn't file any kind of notice of objection. And we'll just add a number fourth, let's say a doubt of motions, even a further fourth discreet thing, he did not file a doubt of motion. As a result, this court shouldn't pay any credence to the argument made forth by the other side unless they can support it with the plain error standard of review. There's been no argument in his brief about the plain error standard of review. And that is one of the toughest things to overcome because he would have to show that it would cause a manifest injustice if this case were allowed to go forward. Even with the expert issue set aside, the state of the medical records themselves, did they provide some basis for a peek at subjective intent? I'm sorry, I don't quite understand that question. I'm looking at the whole AED incident. Is it your contention that that provides a glimpse of that a nurse refers to using a device that upon reflection is inoperable? Well, clearly, Your Honor, if one takes Nurse Craft's report on its face value and then trusts also the EMS report, what is indicated by Ms. Craft's report is an attempt to cover up her horrendous negligence as well as probably the jail's negligence because they kept faulty equipment there. I mean, there's notes in that EMS report that are not noted in anybody else's testimony that he was, for that entire day period he was in the infirmary, he had nausea, vomiting and diarrhea. My word, that should have been included in one of the medical records for that entire day. And it is not anywhere to be found. They noted that one huge discrepancy, which I didn't understand the importance of until a doctor told me, was that Craft in her report that last morning at like 4 a.m. after they've taken Mr. Stevenson out of the jail, and he's dead, and she knows he's dead, she writes that his vomit was pink colored. Well, what we found out through the EMS report is it was coffee ground emesis is what they described it to her. That is some medical term that's known, and what that indicates is that this man had dried blood in his vomit, and that that is a sign of something very serious going on. And if this man has been experiencing nausea, vomiting and diarrhea, and Nurse Clouser, Nurse Craft and Tatum, who's been told all the information, do not put that anywhere in the medical records. I believe it shows a clear subjective intent to cover up the fact that they knew that they had killed this man. Unless your honors have any further questions, I would rest, and yield back my time. So there's no longer a cross appeal? If I may, your honor, I'll address that very briefly so he doesn't have to eat up his time. As far as the cross appeal is concerned, the Florida Supreme Court issued a case called Green v. Cottrell, which completely wipes out the district court's earlier ruling, your honor. It changed the one-year statute of limitations to four. I don't think there's any question, and I'll let him, my opponent, concede that. Thank you, your honor. All right, thank you. Mr. Jolly? May it please the court? Mr. McKenzie has that right, though I think an order is necessary concerning that remaining cross appeal. The undisputed is Judge Rogers had it right when she ruled. She doesn't have it right as a result of what the Supreme Court does. It has to be reversed as gently as possible, but the case law changed. It also reinstates another remedy available to Ms. Yarbrough other than the constitutional remedy. If there are three things that I would like to address, the first one is Judge Newsom correctly pointed out the fourth of my points that I wanted to make as to where Judge Rogers went wrong, and that was that during the initial part of the summary judgment order, she went line by line, person by person, as to what each one did, and then the order got short. They all turned into a they. It all turned into a them. Even Judge Wood has commented in a case called Blackshear that that is an impermissible way of handling it. In that case, Judge Wood wrote, as such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what he or she knows. Another thing that I think is important is much of the case law, much of what we've been talking about here has been under the assumption that the nurses did nothing in the face of the catalog of symptoms being shown on one of the last two days. But that's a miscategorization allowed only with the benefit of hindsight. Nurse Clouser Bray, by the time she went home in her last shift, the condition that she thought she was attacking, she thought she'd gotten a 128 blood sugar, which is very close to normal. She attacked it all day long, took treatment regimens, ultimately unsuccessful. But those behaviors don't logically allow for an inference of subjective intent. Nurse Craft had never seen this guy except for one shift. And when she made the act differently and acted differently, it's not a case of failing to treat. It's a failing to use efficacious treatments. And that's not a constitutional standard. Of course, Dr. Stern disagrees with all that. Dr. Stern does. Yeah. So I got an issue of fact. You have an issue of fact on subjective and subjective admissibility if his testimony is admissible at all. I didn't waive anything. Dr. Stern's testimony was admissible. The inferences that were drawn from it couldn't have been predicted by me. The inferences made by the court of subjective indifference are not subject to objection in advance. I thank you for the court's courtesy. It's been a privilege. Thank you. And the court will be in recess.